UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>(U.S. Department of Treasury on behalf of U.S. Environmental Protection Agency)<br>Plaintiff<br><br>v.<br><br>WR RECYCLING INC.,<br>Defendant, | Civil Case No. |

**COMPLAINT**

**TO THE HONORABLE COURT:**

COMES NOW, the United States of America, (U.S. Department of the Treasury acting on behalf of U.S. Environmental Protection Agency), and by and through the undersigned attorneys very respectfully STATES, ALLEGES AND PRAYS:

This Honorable Court has jurisdiction and venue over this matter pursuant to Title 28, United States Code §1345.

The facts underlying this action arise from defendant's non-compliance with an executed Consent Agreement and Final Order under section 3008 of the Resource Conservation and Recovery Act as amended, 42 U.S.C. §6928 (Exhibit A). The balances stated in this case are listed in a Certificate of Indebtedness dated April 4, 2019, signed by Natalie Stubbs, Financial Program Specialist, U.S. Department of the Treasury, Bureau of the Fiscal Service, acting on behalf of U.S. Environmental Protection Agency. (Exhibit B)

In the first cause of action (Agency debt ID TRFM1600104120/RCRA-02-2012-7106-Stip1-case #1) on May 16, 2014, the Environmental Protection Agency (EPA) and the debtor entered into a fully executed Consent Agreement and Final Order and pursuant to said agreement

the defendant was to implement and perform a Supplemental Environmental Project with a net expenditure of at least $131,000.00. On April 12, 2015, EPA determined the debtor delinquent for payment of net expenditure in the amount of $131,100.00 with an annual interest rate of 1.00% and annual penalty rate of 6.00%.

In the second cause of action (Agency debt ID TRFM1600104121/RCRA-02-2012-7106-Stip2-case #2) on May 16, 2014, the Environmental Protection Agency (EPA) and the debtor entered into a fully executed Consent Agreement and Final Order and pursuant to said agreement the defendant was to implement and perform a Supplemental Environmental Project which shall include a minimum expenditure of $110,000.00 in capital costs on purchasing and installing the items specified in paragraph 5 and 7 pages 10 and 11 of said agreement and final order. On September 17, 2015, EPA determined the debtor delinquent for payment of net expenditure in the amount of $110,000.00 with an annual interest rate of 1.00% and annual penalty rate of 6.00%.

The Environmental Protection Agency and Treasury's Bureau of the Fiscal Service, Debt Management Services sent the debtor letters advising of the delinquency and requesting payment with no avail. (Exhibit C)

WHEREFORE, the United States, respectfully requests that judgment be entered in its favor and against the defendant, WR Recycling Inc., in the total amount of **$414,410.29,** (in the first cause of action the sum of $228,550.77, as of April 4, 2019, ($132,000.00 principal, $5,374.03 interest, $30,396.16 penalty and $60,780.58 Admin fees); in the second cause of action the sum of $185,859.52, as of April 4, 2019, ($110,000.00 principal, $4,001.94 interest, $22,471.64 penalty

**[Intentionally Blank]**

and $49,385.94 Admin fees); plus post-judgment interest thereafter and costs pursuant to 28 U.S.C. §2412 in the amount of $400.00.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 29 of April, 2019.

ROSA EMILIA RODRIGUEZ-VELEZ
United States Attorney

HECTOR E. RAMIREZ-CARBO
Assistant U.S. Attorney
Chief, Civil Division
USDC PR No. 214904

MARITZA GONZALEZ-RIVERA
Assistant U.S. Attorney
U.S.D.C.P.R. 208801
350 Chardon Street, Suite 1201
San Juan, PR 00918
Tel. (787)766-5656
maritza.gonzalez@usdoj.gov

U.S. Environmental Protection Agency-Reg 2
2014 JUN 17 AM 7:51
REGIONAL HEARING CLERK

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 2

| In The Matter of: W.R. Recycling Inc. Respondent Proceeding Under Section 3008 of the Solid Waste Disposal Act, as amended. | CONSENT AGREEMENT AND FINAL ORDER Docket No.: RCRA-02-2012-7106 |
|---|---|

## PRELIMINARY STATEMENT

This civil administrative proceeding was instituted pursuant to Section 3008 of the Solid Waste Disposal Act, as amended by various laws including the Resource Conservation and Recovery Act, and the Hazardous and Solid Waste Amendments of 1984, 42 United States Code (U.S.C.) §§ 6901-6991 (together hereafter the "Act" or "RCRA").

The Complainant in this proceeding, Dore LaPosta, the Director of the Division of Enforcement and Compliance Assistance, Region 2 EPA, has been duly delegated the authority to institute and carry forward this proceeding.

The Respondent is W.R. Recycling, Inc. ("Respondent"). Respondent owns and operates a commercial auto crushing and scrap recycling business in Cabo Rojo, Puerto Rico.

Under Section 3006(b) of the Act, 42 U.S.C. § 6926(b), the Administrator of EPA may, if certain criteria are met, authorize a state to operate a "hazardous waste program" (within the meaning of Section 3006 of the Act, 42 U.S.C. § 6926) in lieu of the federal hazardous waste program. The Commonwealth of Puerto Rico ("Puerto Rico" or "the Commonwealth") is a "State" within the meaning of this provision. Puerto Rico has not received authorization to operate a hazardous waste program pursuant to this provision. As a result, federal hazardous waste regulations remain in effect.

The Complainant issued a Complaint, Compliance Order and Notice of Opportunity for Hearing (the "Complaint") to Respondent on or about September 29, 2012. The Complaint alleged that Respondent failed to comply with RCRA and hazardous waste regulations at its facility in Puerto Rico. Complainant and Respondent conducted settlement negotiations which led to this agreement.

Complainant and Respondent agree, by entering into this Consent Agreement and Final Order ("CA/FO"), that settlement of this matter upon the terms set forth in this CA/FO is an appropriate means of resolving this case without further litigation.



## EPA'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

### RESPONDENT

1. Respondent is W.R. Recycling Inc.

2. Since 2007, Respondent has been, and remains, the owner and operator of a commercial auto crushing and scrap recycling business located at Carr 103 Km. 2.3 Sector Bajura, Cabo Rojo, Puerto Rico 00623.

3. Respondent is a "person" as that term is defined in Section 1004(15) of the Act, 42 U.S.C. § 6903(15), and 40 C.F.R. § 260.10.

4. The Cabo Rojo Puerto Rico location where Respondent conducts its scrap recycling business constitutes a "new facility" and a "facility" as those terms are defined in 40 C.F.R. § 260.10 (hereinafter "facility").

5. Respondent is and has been the "owner" of the facility as that term is defined in 40 C.F.R. § 260.10.

6. Respondent is and has been the "operator" of the facility as that term is defined in 40 C.F.R. § 260.10.

7. Respondent never submitted a Section 3010 Notification of Regulated Waste Activity to EPA. However, EPA assigned Respondent Identification Number PRN008021347 after it conducted an inspection of the facility in 2009.

8. Respondent is and has been a "generator" of "hazardous waste" at its facility as those terms are defined in 40 C.F.R. § 260.10. The requirements for generators are set forth in 40 C.F.R. Part 262.

9. Respondent never submitted a Part A or a Part B Permit Application to EPA for its facility and never received "interim status" or a hazardous waste permit to treat, store or dispose of hazardous waste at its facility.

10. In the course of doing business, Respondent receives decommissioned or "junked" automobiles at its facility. Automobiles contain numerous materials including gasoline, diesel fuel, fuel filters, mercury switches, lead wheel weights, battery cable ends and terminals, air bags, batteries, high intensity lights, instrument panels, antifreeze, oil filters and oil.

11. Respondent stores and then crushes junked vehicles at its facility. Respondent sells the crushed vehicles, which are valued for their metal, to shredders and/or foundries.

12. Prior to crushing, Respondent systematically removed the batteries, tires, wheels, and catalytic convertors from vehicles. However, Respondent neither removed engines, transmissions, airbags or airbag components, mercury switches, oil filters, fuel filters, or air conditioners, nor drains gas tanks, air conditioner fluids, or any other auto fluids, from the junked vehicles prior to storing or crushing the vehicles.

13. On or about September 29 and 30, 2009; March 30, 2011, and August 29, 2012, EPA inspected Respondent's facility to determine its compliance with RCRA and its implementing regulations (hereafter "the 2009 Inspection," "the 2011 Inspection," the "2012 Inspection," or if referred to jointly, "the Inspections.")

**Failure to Make Hazardous Waste Determination**

14. Pursuant to 40 C.F.R. § 262.11, a person who generates "solid waste," as defined in 40 C.F.R. § 261.2, must determine if the solid waste is a hazardous waste using the method set forth therein.

15. Pursuant to 40 C.F.R. § 261.2(b)(3) materials are solid wastes if they are "abandoned by being disposed of ... or accumulated, stored, or treated (but not recycled) before or in lieu of being abandoned by being disposed of...."

16. In the course of its operations, Respondent receives motor vehicles and other discarded goods for recycling. Many if not most of the vehicles received contain fluids and/or parts that may constitute and/or contain hazardous waste. These fluids and parts include gasoline; diesel fuel; fuel filters; coolant; used oil; lead wheel weights; automobile components that may contain mercury (including light switches, anti-lock brake systems, ride leveling sensors, headlights and taillights, and virtual image instrument panels); and/or airbag cartridges that may contain sodium azide.

17. During at least the time period starting with the date of the 2009 Inspection and ending on the date of the 2012 Inspection, Respondent stored and crushed junked motor vehicles without first removing or draining all of the fluids and parts referenced in Paragraph 16 from the vehicles.

18. During at least the time period starting with the date of the 2009 Inspection and ending on date of the 2011 Inspection, Respondent has stored and crushed vehicles directly on top of earthen ground (soil) at its facility. While some fluid was captured during the crushing process in the crusher's drip pan, the storage and crushing of the vehicles resulted in the release, leaking, spilling or placing (hereafter the "disposal") of the fluids and parts referenced in Paragraph 16 directly onto the soil.

19. At the time of the 2009 and 2011 Inspections, fluorescent lights and mercury lamps were discarded in the trash.

20. Each material identified in Paragraphs 16 and 19 was "abandoned by being disposed of" at Respondent's facility, within the meaning of 40 C.F.R. § 261.2(b) and each material therefore constitutes a "solid waste," as defined in 40 C.F.R. § 261.2.

21. Respondent did not make the required determinations as to whether any of the solid wastes referenced in Paragraph 20 constituted hazardous wastes.

22. Each failure by Respondent to determine if the solid wastes referenced in Paragraph 16 constitutes a hazardous waste is a violation of 40 C.F.R. § 262.11.

**Disposal of Hazardous Waste without a Permit**



23. Pursuant to Section 3005 of RCRA, 42 U.S.C. § 6925 and 40 C.F.R. § 270.1(c), an owner or operator cannot dispose of hazardous wastes at its facility without having obtained a permit or interim status authorizing such disposal.

24. "Disposal" is defined in 40 C.F.R. § 260.10 as the "discharge, deposit, injection, dumping, spilling, leaking or placing of any solid waste or hazardous waste into or onto any land so that such solid waste or hazardous waste or constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters."

25. During at least the time period starting with the 2009 Inspection and ending with the 2011 Inspection, Respondent, in the course, or as a result, of crushing motor vehicles, deposited, disposed of, dumped, spilled and/or leaked (hereafter referred to as "released") gasoline directly onto the soil at its facility.

26. The gasoline released onto the soil at the Respondent's facility constitutes a "solid waste," as that term is defined 40 C.F.R. § 261.2.

27. Pursuant to 40 C.F.R. § 261.3, any solid waste which exhibits any characteristic identified in Subpart C of 40 C.F.R. Part 261, such as ignitability or toxicity, constitutes a hazardous waste.

28. Gasoline is ignitable, and toxic for benzene, as those characteristics are defined in 40 C.F.R. § 261.21 and 40 C.F.R. § 261.24, respectively.

29. The gasoline disposed of at Respondent's facility constitutes a "hazardous waste" as defined in 40 C.F.R. §§ 261.21 and 261.24.

30. Each release of gasoline onto the soil at the Respondent's facility constitutes a "disposal" of "hazardous waste" as defined in 40 C.F.R. § 260.10 and 40 C.F.R. § 261.3, respectively.

31. Respondent's disposal of hazardous waste at its facility, which does not have interim status or a permit authorizing such disposal, is a violation of Section 3005 of RCRA, 42 U.S.C. § 6925, and 40 C.F.R. § 270.1.

<u>Failure to Minimize the Possibility of Releases</u>

32. Pursuant to 40 C.F.R. § 264.1(b), owners and operators of all facilities which treat, store or dispose of hazardous waste must, unless subject to certain exceptions which are inapplicable here, comply with the requirements set forth in 40 C.F.R. Part 264.

33. Pursuant to 40 C.F.R. § 264.31, owners and operators must maintain their facilities to "minimize the possibility of a fire, explosion or any unplanned sudden or non-sudden release of hazardous waste or hazardous waste constituents to air, soil, or surface water which could threaten human health or the environment."



34. While operating and maintaining its facility, Respondent:

a. During at least the time period starting with the date of the 2009 Inspection and ending on the date of the 2012 Inspection, failed, and did not have procedures in place, to remove all fluids (such as gasoline and diesel fuel) and parts (such as mercury containing light switches, high intensity discharge systems (*e.g.*, headlights and tail lamps), and mercury containing G-force sensors in anti-lock brake systems from junked automobiles prior to receiving and storing such vehicles, potentially permitting the release of hazardous waste and/or hazardous waste constituents into the environment from such fluids and parts.

b. During at least the time period starting with the date of the 2009 Inspection and ending on the date of the 2011 Inspection, stored and crushed motor vehicles directly on the soil rather than on a non-porous surface pad, thereby allowing fluids that may contain hazardous waste or hazardous waste constituents to be released directly onto the soil at the facility.

c. During at least the time period starting on the date of the 2009 Inspection and ending on the date of the 2012 Inspection, crushed motor vehicles containing volatile hazardous waste constituents, including benzene, thereby allowing fluids that may contain hazardous waste or hazardous waste constituents to volatize into the air.

d. During at least the time period starting with the date of the 2009 Inspection and ending on the date of the 2012 Inspection, failed to have a sufficient stormwater runoff collection system to minimize or eliminate runoff or percolation of stormwater and fluids released from vehicles before, during or after crushing, thereby allowing storm water, which may be contaminated with hazardous wastes and/or hazardous waste constituents from the vehicles, to spread to and contaminate additional areas at the facility.

e. During at least the 2009 and 2011 Inspections, stored lead acid batteries and wheel weights uncovered in the open air on bare soil, permitting the release of hazardous waste or hazardous waste constituents into the environment.

f. During at least the 2011 and 2012 Inspections, stored fluids collected in the crushing process in the crusher's drip pan (which was not capped, enclosed or otherwise contained), and in open drums, risking the release of an amalgamation of hazardous wastes and/or hazardous waste constituents into the environment.

g. During at least the time period starting with the date of the 2009 Inspection and ending on the date of the 2012 Inspection, failed to equip the facility with spill and fire control equipment. The releases of used oil and fuel at the facility increased the risk of fires and explosions and thus potential releases of hazardous waste and/or hazardous waste constituents to the environment through fire, smoke and ash.

35. Each action or inaction set forth in Paragraph 34 constitutes a failure by Respondent to maintain or operate its facility in a manner minimizing the possibility of a fire, explosion or any unplanned sudden or non-sudden release of hazardous waste or hazardous waste constituents to air, soil, or surface water which could threaten human health or the environment in violation of 40 C.F.R. § 264.31.

**Improper Disposal of Used Oil**

36. "Used oil" is "any oil that has been refined from crude oil, or any synthetic oil, that has been used and as a result of such use is contaminated by physical or chemical impurities." 40 C.F.R. § 279.1.

37. Subpart I of 40 C.F.R. Part 279 sets forth the standards for the disposal of used oil that is not being recycled and is being disposed of. Pursuant to 40 C.F.R. § 279.81, used oils that are not recycled and are identified as hazardous waste must be managed and/or disposed of in accordance with hazardous waste requirements set forth in 40 C.F.R. Parts 260-266, 268 and 270. Pursuant to 40 C.F.R. § 279.81(b), used oils that do not constitute hazardous waste must be disposed of under the requirements of 40 C.F.R. Parts 257 and 258.

38. Since at least the 2009 Inspection through the 2012 Inspection, Respondent received junked motor vehicles which contained "used oil" as defined in 40 C.F.R. § 279.1.

39. During at least the period of time between the date of the 2009 Inspection through the end of the 2011 Inspection, Respondent crushed vehicles directly over the soil without first removing all of the used oil from the vehicles. Used oil was released or otherwise disposed of onto the soil at Respondent's facility during the crushing process.

40. Respondent's disposal of used oil at its facility without complying with hazardous waste requirements (if the used oil was a hazardous waste) or without complying with 40 C.F.R. Parts 257 and 258 (if the used oil was not a hazardous waste) constitutes violations of 40 C.F.R. § 279.81.



Failure to Label Used Oil Storage Containers

41. A "used oil generator" is defined at 40 C.F.R. § 279.20 as any person, by site, whose act or process produces used oil or whose act first causes used oil to become subject to regulation."

42. Respondent removes and accumulates "used oil" as that term is defined in 40 C.F.R. § 279.1 from its service and support vehicles, as well as from heavy equipment used and/or maintained on site. Respondent is a "used oil generator" as that term is defined in 40 C.F.R. § 279.20.

43. Forty C.F.R. § 279.22(c) requires that containers used to store used oil at generator facilities must be labeled or marked with the words "used oil."

44. During at least the 2012 Inspection, Respondent stored used oil in numerous containers that were not labeled or marked with the words "used oil."

45. Respondent violated 40 C.F.R. § 279.22 by failing to properly label containers used to store used oil.

CONSENT AGREEMENT

Pursuant to Section 3008 of RCRA and the Consolidated Rules of Practice Governing the Administrative Assessment of Civil Penalties and Revocation or Suspension of Permits, 40 C.F.R. § 22.18, it is hereby agreed by and between the parties and Respondent knowingly and voluntarily agrees as follows:

1. Commencing upon the effective date of this Consent Agreement and Final Order (CA/FO) and continuing thereafter, Respondent shall:

a. make hazardous waste determinations for each solid waste generated at its facility pursuant to 40 C.F.R. î 262.11;

b. maintain and operate the facility in a manner that minimizes the possibility of a fire, explosion, or any unplanned sudden or non-sudden release of hazardous waste or hazardous waste constituents to air, soil or surface water which could threaten human health or the environment pursuant to 40 C.F.R. î 264.31;

c. cease the disposal of hazardous waste at its facility unless or until it applies for and receives a hazardous waste permit from EPA authorizing such disposal pursuant to Section 3005 of RCRA and 40 C.F.R § 270.1;

d. cease the disposal of used oil at its facility unless or until it receives a permit authorizing such disposal, or otherwise acts in accordance with 40 C.F.R. Parts 257, 258, 260 - 266, 268, and 270; and

e. comply with all applicable requirements for used oil generators set forth in 40 C.F.R. Part 279 including labeling containers used to store used oil.



Within thirty (30) days of the effective date of this Consent Agreement and Final Order, Respondent shall send a Compliance Report to EPA detailing its present compliance with the requirements set forth in Paragraph 1 of this Consent Agreement. This Compliance Report shall include all appropriate documentation and evidence. If appropriate, Respondent may reference documentation previously submitted to EPA. The Compliance Report should be sent to:

Mr. Steven Petrucelli
Environmental Engineer
RCRA Compliance Branch
Division of Enforcement and Compliance Assistance
U.S. Environmental Protection Agency - Region 2
290 Broadway, 21st Floor
New York, NY 10007-1866

2. For the purpose of this proceeding, Respondent admits the jurisdictional allegations of the Complaint and neither admits nor denies specific factual allegations contained in the Complaint.

3. Respondent shall pay a civil penalty to EPA in the total amount of twenty-eight thousand seven hundred and thirty-five ($28,735). This penalty amount shall be paid as follows:

a. The first installment of four thousand seven hundred and ninety dollars ($4,790) must be received within 90 days of the effective date of this CA/FO. (The date by which this first payment must be received shall hereinafter be referred to as the "Due Date.")

b. The second installment of four thousand seven hundred and ninety dollars ($4,790) must be received within 90 days of the due date;

c. The third installment of four thousand seven hundred and ninety dollars ($4,790) must be received within 180 days of the due date;

d. The fourth installment of four thousand seven hundred and ninety dollars ($4,790) must be received within 270 days of the due date;

e. The fifth installment of four thousand seven hundred and ninety dollars ($4,790) must be received within 360 days of the due date; and

f. The sixth installment of four thousand seven hundred and eighty-five dollars ($4,785) must be received within 450 days of the due date.

If Respondent fails to pay any installment timely ("missed installment"), the remainder of the penalty ("the outstanding penalty amount") shall become due and owing. The outstanding penalty amount must be received within 15 days of the date the missed installment was required to be paid pursuant to the above schedule.

Each such payment shall be made by cashier's or certified checks or by Electronic Fund Transfers ("EFT"). If the payments are made by checks, then the checks shall be made payable to the "Treasurer, United States of America," and shall be mailed to:



U.S. Environmental Protection Agency
Fines and Penalties
Cincinnati Finance Center
P.O. Box 979077
St. Louis, MO 63197-9000

Each check shall be identified with a notation thereon: **In the Matter of W.R. Recycling Inc.** and shall bear thereon the Docket Number: **RCRA-02-2012-7106**. If Respondent chooses to make the payment by EFT, then Respondent shall provide the following information to its remitter bank:

1) Amount of Payment
2) SWIFT address: FRNYUS33, 33 Liberty Street, New York, NY 10045.
3) Account Code for Federal Reserve Bank of New York receiving payment: 68010727.
4) Federal Reserve Bank of New York ABA routing number: 021030004.
5) Field Tag 4200 of the Fedwire message should read: "D68010727 Environmental Protection Agency."
6) Name of Respondent: **W.R. Recycling Inc.**
7) Case Number: **RCRA-02-2012-7106**.

Whether the payments are made by checks or by EFT, the Respondent shall promptly thereafter furnish reasonable proof that such payments have been made to:

Amy Chester
Assistant Regional Counsel
U.S. Environmental Protection Agency-Region 2
290 Broadway, 16th Floor
New York, New York 10007-1866

and

Karen Maples
Regional Hearing Clerk
U.S. Environmental Protection Agency- Region 2
290 Broadway, 16th Floor
New York, New York 10007-1866

Payment must be received pursuant to the provisions above.

a. Failure to pay the civil penalty in full according to the above provisions may result in referral of this matter to the United States Department of Justice or the United States Department of the Treasury for collection.

b. Further, if any payment is not received on or before the deadlines described in Paragraph 3 above, interest will be assessed at the annual rate established by the Secretary of the Treasury pursuant to the Debt Collection Act, 31 U.S.C. § 3717, on the overdue amount from the deadline through the date of payment. In addition, a late payment handling charge of fifteen dollars ($15.00) will be assessed for each thirty (30) day period (or any portion thereof) following the deadline in which a balance remains unpaid. A six percent (6%) per annum penalty will also be applied on any principal amount not paid within ninety (90) days of the deadlines in Paragraph 3.

c. The civil penalty constitutes a penalty within the meaning of 26 U.S.C. § 162(f). Respondent has read the Consent Agreement, understands its terms, finds it to be reasonable and consents to its terms. Respondent consents to the issuance of the accompanying Final Order. Respondent agrees that all the terms of the settlement are set forth herein.

4. Respondent agrees to, and shall in accordance with the terms and conditions of this CA/FO, implement and perform a Supplemental Environmental Project ("SEP") that consists of the acquisition, operation, and maintenance of material recovery equipment and the construction and maintenance of a covered, bermed and reinforced concrete pad with appropriate oil- and fuel-resistant sealant in all joints; a drainage collection system and an oil water separator all to be used for a period of at least three years. To implement this SEP, Respondent shall spend a net expenditure of at least one hundred and thirty-three thousand dollars ($133,000), which shall include a minimum expenditure of one hundred and ten thousand dollars ($110,000) in capital costs on purchasing and installing the items specified in Paragraphs 5 and 7 below. (Creditable expenditures for this SEP shall not include any economic savings enjoyed by the Respondent attributable to equipment purchased as part of this SEP.)

5. Respondent shall purchase and obtain the following machinery and equipment within ninety days of the effective date of this CA/FO: a) mobile recovery unit with a built in containment system that removes and collects fluids from scrap vehicles; b) a refrigerant recovery unit; c) gear box drills for waste oil and fuels with collection funnels; and d) four mounted 500 gallon double walled above ground tanks.

6. Respondent shall train its employees on, and begin using machinery and equipment described in Paragraph 5 within one hundred and twenty (120) days of the effective date of this CA/FO.

7. Within one hundred and fifty (150) days of the effective date of the CA/FO, Respondent shall complete construction of a bermed, reinforced concrete pad at its facility with a) appropriate oil- and fuel-resistant sealant in all joints; b) a drainage collection system; c) an oil water separator; and d) a galvanized roof. Respondent shall thereafter conduct all facility scrap operations at the facility on the concrete pad, with all vehicles being processed beneath the galvanized roof.

8. Any hazardous wastes generated in the material recovery process shall be managed and disposed of pursuant to all applicable federal and commonwealth hazardous waste laws and regulations. Additionally, used oil, tires and other waste materials shall be recycled to the extent recycling is an available option for any collected waste material.



9. Respondent shall meet all applicable Clean Water Act requirements including the standards of the currently applicable NPDES non-point source general permit for Sector M - Automobile Salvage Yards and of any other applicable sector general permits for operations conducted at the facility (*e.g.*, Sector N - Scrap Recycling and Waste Recycling).



10. Within one hundred and eighty (180) days after the effective date of this CA/FO, Respondent shall submit a SEP Report in English to EPA for approval, to the addressee set forth in Paragraph I of this section, which shall:

a. Provide documentation of the timely purchase and delivery of all machinery and equipment referenced in Paragraph 5 above.

b. Provide documentation of the installation, operation, and maintenance of the all machinery and equipment referenced in Paragraph 5 above.

c. Provide documentation of employee training on the machinery and equipment required by Paragraph 5 above, including the submission of any written materials distributed or shown during the training, evidence documenting the cost of and payment for such training, and a list of personnel trained. All materials shall be submitted in English, except for the training materials to the extent such materials were originally written, and provided to employees, in Spanish.

d. Provide documentation of the construction, use and maintenance of the concrete pad as described in Paragraph 7 above.

e. Provide an acquisition cost report, with appropriate documentation, certified as accurate under penalty of perjury by a responsible corporate official that the sum of at least $110,000 (excluding savings) was spent by the Respondent in the purchase of the material recovery equipment and the construction of the concrete pad and other equipment and improvements as detailed in Paragraphs 5 and 7, respectively.

f. Provide a net expenditure report certified as accurate under penalty of perjury by a responsible corporate official itemizing the costs incurred to date in

the purchase, construction, installation, operation and maintenance of the machinery, equipment required under this SEP, including any shipping, training, labor, repair and electrical costs that would not have been incurred but for the implementation of the SEP as required herein.

11. No later than twelve, eighteen, twenty-four, thirty and thirty-six months from the effective date of this CA/FO, Respondent shall submit a separate SEP Report in English to EPA for approval, to the addressee set forth in Paragraph 1 of this section, which shall:

a. Provide documentation of the continued ownership, maintenance and operation of all machinery and equipment referenced in Paragraph 5 above, as well as documentation of continued training on such machinery and equipment;



b. Provide documentation of the maintenance and use of the concrete pad, including the ancillary systems and improvements, referenced in Paragraph 7 above;

c Review and detail the effectiveness of the mobile unit and other equipment in recovering materials, including the types and amounts of materials being recovered and the extent to which these materials are managed and/or disposed of as hazardous wastes and/or recycled. This review should address, but is not to be limited to, the following materials: used oil, tires, lead wheel weights, refrigerant, mercury, fuels and vehicle fluids such as coolant, brake and transmission fluids; and

d. Provide an expenditure report certified as accurate under penalty of perjury by a responsible corporate official itemizing each of the costs incurred to date (and not previously itemized in a report to EPA) in the implementation of the SEP, including the operation and maintenance of the equipment purchased under this SEP. Operational and maintenance costs may include any training expenditures, labor and/or electrical costs which were incurred solely as a result of implementing the SEP required herein.

12. Following its receipt of each SEP Report required above, EPA will either (a) accept the SEP Report or (b) reject the SEP Report, notify the Respondent, in writing, of questions EPA has and/or deficiencies therein and grant Respondent an additional short period of time, which shall be reasonable under the then-existing circumstances (fifteen (15) days at a minimum), in which to answer EPA's inquiries and/or to correct any deficiencies in the SEP Report. EPA has the sole authority to determine whether costs expended are creditable to the SEP as herein required; (Deficiencies may include a determination by EPA that certain expenditures are not creditable to the SEP.)

13. Thirty-nine (39) months after the effective date of this CA/FO, Respondent shall submit a Final SEP Report in English to EPA for approval, to the addressee set forth in Paragraph 1 of this section above, which shall provide:

a. a summary and analysis of all of the information required under Paragraphs 10 and 11 covering the 36 month SEP period, *i.e.*, the entire three year period during which the SEP was implemented. This report shall include the type and amount of waste or material recovered from vehicles at the facility and the final disposition of the each type of waste or material (*i.e.*, whether the waste or material was recycled or disposed of as a solid or hazardous waste).

b. An overall assessment of the value of the mobile system over the 36 month SEP period, including the number of days the unit was employed outside of the facility, the type and amount of waste or material recovered from vehicles located beyond the facility boundary, including the final disposition of the each type of waste or material, *i.e*, whether the waste or material was recycled or disposed of as a solid or hazardous waste.



c. A certification under penalty of perjury by a responsible corporate official that a net expenditure (*i.e.*, expenditures excluding any savings Respondent realized) of at least one hundred thousand and thirty-three dollars ($133,000) was spent in the implementation of this SEP, including a minimum net expenditure of one hundred and ten thousand dollars ($110,000) in capital costs over the 36 month SEP period. Documentation should be submitted verifying each of the net costs incurred in implementation of the SEP.

d. A certification under penalty of perjury by a responsible corporate official that the SEP was performed in accordance with the terms of this CA/FO.

14. Following receipt of the Final SEP Report described in the paragraph above, EPA will either (i) accept the Final SEP Report or (ii) reject the Final SEP Report; notify the Respondent, in writing, of questions EPA has and/or deficiencies therein and grant Respondent an additional short period of time, which shall be reasonable under the then-existing circumstances (fifteen (15) days at a minimum), in which to respond to EPA's inquiries and/or to correct any deficiencies in the Final SEP Report.

15. Whether Respondent has complied with the terms of this CA/FO with regard to the successful and satisfactory implementation and/or operation of the SEP as herein required, including whether Respondent has made good faith and timely efforts to effect same, and whether costs expended are creditable to the SEP as herein required shall be solely determined by EPA. Should EPA have any concerns about the satisfactory completion of the SEP, EPA will communicate those concerns in writing to Respondent and provide it with an opportunity to respond, and/or correct any of the deficiency(ies). If EPA makes a determination that the SEP has been satisfactorily completed, it will provide Respondent with written confirmation of the determination within a reasonable amount of time.

16. Respondent agrees that EPA (including authorized representatives of EPA) may inspect the facility during reasonable business hours in order to confirm that the SEP is being implemented properly and in conformity with the terms and conditions set forth in this CA/FO, provided, however, this paragraph is not intended or is to be construed to deny, limit or waive any right of EPA pursuant to applicable law, including the provisions of RCRA, to conduct an inspection of the facility for any purpose allowed by any applicable law.

17. Respondent shall maintain in one central location legible copies of documentation concerning the development, implementation and financing of the SEP, and documentation supporting information in the reports required to be submitted to EPA pursuant to this CA/FO. Respondent shall grant EPA (including authorized representatives of EPA) access to such documentation and shall provide copies of such documentation to EPA within twenty (20) days of Respondent's receipt of a request by EPA for such information or within such additional time as approved by EPA, in writing. The provisions of this paragraph shall remain in effect for five (5) years from the effective date of this CA/FO, or two years after the completion of the SEP, whichever date is later.

18. The SEP to be implemented by Respondent pursuant to this CA/FO has been accepted by EPA solely for purposes of settlement of this administrative proceeding. Nothing in this CA/FO is intended or is to be construed as a ruling on or determination of any issue related to any federal, Commonwealth or local permit.



19. Any public statement, oral or written, in print, film or other media, made by the Respondent, or by any officer, employee or agent of the Respondent, that makes reference to the SEP under this CA/FO shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action initiated by the U.S. Environmental Protection Agency against W.R. Recycling, Inc. under the Resource Conservation and Recovery Act."

20. Respondent hereby certifies that, as of the date of its authorized signature on this Consent Agreement, it is not required to implement or complete the aforementioned SEP pursuant to any federal, Commonwealth or local law, or other requirement including federal or Commonwealth rules. Respondent further certifies that, with the exception of this Consent Agreement, Respondent is not required to implement or complete the SEP set forth in this Consent Agreement by any agreement, grant, or as injunctive relief in this or any other suit, action or proceeding in any jurisdiction, and that Respondent had not instituted before October 2012 any of the work that is part of this SEP.

21. Respondent certifies that it has not received, and is not presently negotiating to receive, credit in any other enforcement action for the aforementioned SEP and that Respondent in good faith believes that the SEP is in accordance with the provisions of EPA's 1998 Final Supplemental Environmental Projects policy set forth at 63 *Federal Register* 24796 (May 5, 1998).

22. Respondent certifies that it is not a party to any open federal financial assistance transaction that is funding or could be used to fund the same activity as the SEP. Respondent further certifies, to the best of its knowledge and belief after reasonable and diligent inquiry, there is no such open federal financial transaction that constitutes funding or could be used to fund the same activity as the SEP, nor has the same activity as the SEP been described in an unsuccessful federal financial assistance transaction submitted to EPA within two years of the date of the execution of this settlement (unless the project(s) was barred from funding as statutorily ineligible). For the purpose of the certifications to be made pursuant to this paragraph, the term "open federal financial assistance transaction" refers to a grant, cooperative

agreement, loan, federally-guaranteed loan guarantee or other mechanism for providing federal financial assistance whose performance period has not yet expired.

23. Respondent shall not use or expend any money received from the United States government, as a grant or otherwise, directly to finance, implement, perform and/or operate any aspect or any portion of the aforementioned SEP.

24. EPA may, in the exercise of its discretion, grant an extension of the date(s) of performance established in this CA/FO with regard to any of requirements for the SEP, if good cause exists for such extension(s). If Respondent submits a request for extension, such request shall be accompanied by supporting documentation and be submitted to EPA no later than fourteen (14) days prior to any due date set forth in this CA/FO, or other deadline established pursuant to this CA/FO. Such extension, if any, shall be approved in writing.



25. Respondent shall be liable for stipulated penalties in the event Respondent fails to comply with the terms and conditions of this CA/FO including the performance, implementation, completion and operation of the SEP as set forth below in this paragraph:



a. If the SEP is not undertaken, Respondent shall pay a stipulated penalty of $110,000;

b. If EPA determines that the SEPs is satisfactorily completed, and Respondent has spent at least 90 percent of the total amount of money that it was required to expend for the SEP on expenditures that EPA determines are creditable toward the SEP (*i.e.* Respondent has spent $119,700 (90% of $133,000), provided EPA has determined said amount is creditable toward the SEP), Respondent shall not pay stipulated penalty for not having spent the full amount specified herein for the SEP.

c. If EPA determines that the SEP is satisfactorily completed and implemented but Respondent has spent less than 90 percent of the amount of money required to be spent for the SEP on expenditures that EPA determines are creditable toward the SEP, Respondent shall pay a stipulated penalty equal to two hundred (200) percent of the difference between the required amount to be spent ($133,000) and the amount Respondent actually spent on expenditures that EPA determines are creditable toward said SEP.

d. For any failure to timely submit any SEP Operational Report or any other report required by this CA/FO, Respondent shall pay a stipulated penalty in the amount of $150.00 for each day any such report is late up to the 30th day, and Respondent shall pay a stipulated penalty in the amount of $500 for each day any such report is thereafter late, and such penalty(ies) shall continue to accrue from the first date such report(s) is untimely until said report(s) is submitted to EPA

26. Unless Respondent provides EPA with a written explanation pursuant to the Paragraph below, all stipulated penalties are due and payable within thirty (30) days of Respondent's receipt of EPA's written demand for payment of the penalty(ies). The method of payment shall be in accordance with the provisions of Paragraph 3 of this section above. Interest and a late payment handling charge will be assessed in the same manner and in the same amounts as

specified in Paragraph 3, above. Penalties shall accrue as provided above regardless of whether EPA has notified the Respondent of the violation or made a demand for payment, but need only be paid upon demand.

27. After receipt of a demand from EPA for stipulated penalty(ies) pursuant to the above paragraph, Respondent shall have twenty (20) days in which to provide EPA with a written explanation of why it believes that a stipulated penalty(ies) is not due and owing, or is not appropriate, for the cited violation(s) of the terms and conditions of this CA/FO (including any technical, financial or other information that Respondent deems relevant).

28. EPA may, in the exercise of its sole discretion, waive or reduce any stipulated penalty due if Respondent has in writing demonstrated to EPA's satisfaction good cause for such action. If, after review of Respondent's submission pursuant to the preceding paragraph, EPA determines that Respondent has failed to comply with the terms and conditions of this CA/FO and concludes that the demanded stipulated penalty(ies) is due and owing, and further EPA has not waived or reduced the demanded stipulated penalty(ies), EPA will notify Respondent, in writing, of its decision regarding the stipulated penalty(ies). Respondent shall then, within thirty (30) days of receipt thereof, pay the stipulated penalty amount(s) indicated in EPA's notice. (EPA may also in its discretion, *sua sponte*, decide not to demand stipulated penalties.)



29. Failure of Respondent to pay any stipulated penalty(ies) demanded by EPA pursuant to this CA/FO may result in referral of this matter to the United States Department of Justice or the United States Department of the Treasury for collection or other action provided by applicable law.

30. For federal income tax purposes, Respondent agrees that it will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing the SEP.

31. This CA/FO is being voluntarily and knowingly entered into by the parties to resolve (upon full payment of the civil penalty herein) the civil and administrative claims alleged in the Complaint in this matter. Nothing herein shall be read to preclude EPA or the United States, however, from pursuing appropriate injunctive or other equitable relief or criminal sanctions for any violations of law.

32. This CA/FO and any provision herein shall not be construed as an admission of liability in any criminal or civil action or other administrative proceeding, except in an action, suit or proceeding to enforce this CA/FO or any of its terms and conditions.

33. Respondent waives its right to request a hearing on the Complaint, this Agreement, or the Final Order included herein, including any right to contest any allegations or EPA's Findings of Fact or Conclusions of Law contained within these documents.

34. Respondent waives any right it may have pursuant to 40 C.F.R. § 22.8 to be present during discussions with or to be served with and to reply to any memorandum or communication addressed to the Regional Administrator, the Deputy Regional Administrator or Regional Judicial Officer where the purpose of such discussion, memorandum, or communication is to

discuss a proposed settlement of this matter or to recommend that such official accept this Consent Agreement and issue the attached Final Order.

35. This CA/FO does not waive, extinguish, or otherwise affect Respondent's obligation to comply with all applicable provisions of the Act and the regulations implementing it, nor shall it be construed as the issuance of a permit or a ruling on, or determination of, any issues related to any federal, commonwealth or local law, regulation or permit.



36. Each party shall bear its own costs and fees in this matter.

37. The representative of Respondent signing this Consent Agreement certifies that he or she is duly and fully authorized to enter into and ratify this Consent Agreement and all the terms and conditions set forth in this Consent Agreement. The provisions of this Consent Agreement shall be binding upon Respondent and its officials including authorized representatives and successors or assigns.

38. Respondent consents to service upon Respondent of a copy of this CA/FO by an EPA employee other than the Regional Hearing Clerk.

39. The effective date of this CA/FO shall be the date of filing with the Regional Hearing Clerk, U.S. EPA, Region 2, New York, New York.

RESPONDENT:

W.R. Recycling Inc.

BY: [signature]

NAME: Wildemar Farmer

TITLE: Owner

DATE: May 16, 2014

[signature]
José J. Lugo Toro, Esq.

COMPLAINANT:

United States Environmental Protection Agency – Region 2

BY: ______________________

NAME: Dore LaPosta

TITLE: Director, Division of Enforcement & Compliance Assistance

DATE: JUNE 10, 2014

**FINAL ORDER**
**Docket Number: RCRA-02-2012-7106**

The Regional Administrator of the U.S. Environmental Protection Agency, Region 2, ratifies the foregoing Consent Agreement. The Agreement entered into by the parties is hereby approved, incorporated herein, and issued as an Order pursuant to Section 3008 of the Act and 40 C.F.R. § 22.18(b)(3). The effective date of this Order shall be the date of filing with the Regional Hearing Clerk, U.S. EPA, Region 2, New York, New York 10007.

Judith A. Enck

**Judith A. Enck**
**Regional Administrator**
**EPA-Region 2**

DATE: 6-11-14



U.S. DEPARTMENT OF THE TREASURY
BUREAU OF THE FISCAL SERVICE
WASHINGTON, DC 20227

ACTING ON BEHALF OF
U. S. ENVIRONMENTAL PROTECTION AGENCY
CERTIFICATE OF INDEBTEDNESS

WR RECYCLING INC
2.3 CARR 103
CABO ROJO, PR 00623
**TIN: 66-0616104**

**RE: Agency Debt ID Nos.: TRFM1600104120/RCRA-02-2012-7106-STIP1 and TRFM1600104121/RCRA-02-2012-7106-STIP2***

I hereby certify, as part of my duties with the U.S. Department of the Treasury (Treasury), including referring matters to the U.S. Department of Justice (DOJ) for litigation, I am a custodian of records of certain files sent by the U.S. Environmental Protection Agency (EPA), to Treasury for collection actions. As a custodian of records for Treasury, I have care and custody of records relating to the two (2) debts owed by WR Recycling, Inc. (DEBTOR) to EPA.

The information contained in this Certificate of Indebtedness is based on documents created by an employee or contractor of EPA based on his/her knowledge at or near the time the events were recorded, including the review of Environmental Protection Agency (EPA) violations, or by an employee or contractor of Treasury based on his/her knowledge at or near the time the events were recorded, including the review of Environmental Protection Agency (EPA) violations. Treasury's regular business practice is to receive, store and rely on the documents provided by EPA, when debts are referred to Treasury for collection activities, including litigation.

**TRFM1600104120/RCRA-02-2012-7106-STIP1 – Case #1**
On May 16, 2014, EPA and the DEBTOR entered into a fully executed Consent Agreement and Final Order (CAFO) and pursuant to paragraph 4, page 10 of said agreement DEBTOR was to implement and perform a Supplemental Environmental Project with a net expenditure of at least $131,000.00.

On April 12, 2015, EPA determined the DEBTOR delinquent for payment of net expenditure in the amount of $131,100.00 with an annual interest rate of 1.00% and annual penalty rate of 6.00%. EPA sent the DEBTOR letters advising of the delinquency and requesting payment to no avail.

EPA referred the claim to Treasury's Bureau of the Fiscal Service, Debt Management Services (DMS) to collect the delinquent debt on March 21, 2016. Further, I certify that I am familiar with Treasury's record keeping practices, including the receipt of files from EPA.





U.S. DEPARTMENT OF THE TREASURY
BUREAU OF THE FISCAL SERVICE
WASHINGTON, DC 20227

ACTING ON BEHALF OF
U. S. ENVIRONMENTAL PROTECTION AGENCY
CERTIFICATE OF INDEBTEDNESS

On April 3, 2019, DMS referred the claim to DOJ for litigation and collection in the amount due of $218,302.33 with daily interest of $3.62 and daily penalty of $ 21.70. As of April 4, 2019, the DEBTOR is indebted to the United States in the amount stated as follows:

| | |
|---|---|
| Principal: | $ 132,000.00 |
| Interest (@ 1.00%): | $ 5,374.03 |
| Penalty (@ 6.00%): | $ 30,396.16 |
| Admin Fees: | $ 60,780.58 |
| **Total:** | **$ 228,550.77** |

**TRFM1600104121/RCRA-02-2012-7106-STIP2* – Case #2**

On May 16, 2014, EPA and the DEBTOR entered into a fully executed Consent Agreement and Final Order (CAFO) and pursuant to paragraph 4, page 10 of said agreement DEBTOR was to implement and perform a Supplemental Environmental Project which shall include a minimum expenditure of $110,000.00 in capital costs on purchasing and installing the items specified in paragraphs 5 and 7 on pages 10 and 11 of the CAFO .

On September 17, 2015, EPA determined the DEBTOR delinquent for payment of minimum expenditure in the amount of $110,000.00 with an annual interest rate of 1.00% and annual penalty rate of 6.00%. EPA sent the DEBTOR letters advising of the delinquency and requesting payment to no avail.

EPA referred the claim to Treasury's Bureau of the Fiscal Service, Debt Management Services (DMS) to collect the delinquent debt on March 21, 2016. Further, I certify that I am familiar with Treasury's record keeping practices, including the receipt of files from EPA.

On April 3, 2019, DMS referred the claim to DOJ for litigation and collection in the amount due of $177,524.73 with daily interest of $3.02 and daily penalty of $ 18.08. As of April 4, 2019, the DEBTOR is indebted to the United States in the amount stated as follows:

| | |
|---|---|
| Principal: | $ 110,000.00 |
| Interest (@ 1.00%): | $ 4,001.94 |
| Penalty (@ 6.00%): | $ 22,471.64 |
| Admin Fees: | $ 49,385.94 |
| **Total:** | **$ 185,859.52** |



U.S. DEPARTMENT OF THE TREASURY
BUREAU OF THE FISCAL SERVICE
WASHINGTON, DC 20227

ACTING ON BEHALF OF
U. S. ENVIRONMENTAL PROTECTION AGENCY
CERTIFICATE OF INDEBTEDNESS

The balances stated in the case(s) listed above are current as of April 4, 2019, including any applicable interest, penalties, administrative fees, and DMS & DOJ fees (pursuant to 31 U.S.C. 3717(e) and 3711(g)(6), (7); 31 C.F.R. 285.12(j) and 31 C.F.R. 901.1(f); and 28 U.S.C. 527, note).

Pursuant to 28 U.S.C. § 1746(2), I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief based upon information provided by the EPA and information contained in Treasury's records.

4/4/2019

X *Natalie R. Stubbs*

Signed by: Natalie R. Stubbs
Natalie Stubbs
Financial Program Specialist
U.S. Department of the Treasury
Bureau of the Fiscal Service



UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 2
290 BROADWAY
NEW YORK, NY 10007-1866

MAR 13 2015

**United States First Class Mail and Email**

Lcdo. Jose L. Lugo Toro
Lugo Toro Law Offices
PMB 171
400 Calle Calaf
San Juan, Puerto Rico 00918-1314

Re: **W.R. Recycling Inc.**
**Stipulated Penalty Demand under Consent Agreement and Final Order**
**Docket No. RCRA-02-2012-7106**

Dear Counsel:

W.R. Recycling Inc. (W.R. Recycling) has failed to submit two reports required under the above referenced Consent Agreement and Final Order (CA/FO). The Agency has sent numerous emails to your attention seeking your client's compliance with these requirements. Notwithstanding these efforts, EPA has yet to receive either of the following two reports: [1]

- The Compliance Report, due on July 17, 2014, detailing the facility's compliance with the requirements set forth in Paragraph 1 of the Consent Agreement. See Paragraph 1 of the Consent Agreement.

- The first Supplemental Environmental Project (SEP) Report, due on December 14, 2014, detailing, amongst other things, the purchase, delivery, installation and operation of machinery and equipment to implement the approved SEP. See Paragraph 10 of the Consent Agreement.[2]

Pursuant to Paragraph 25d of the Consent Agreement, W.R. Recycling is liable for stipulated penalties for "failure to timely submit any SEP Operational Report or any other report required by" the CA/FO. Accordingly, pursuant to Paragraph 25d of the Consent Agreement, **stipulated penalties are hereby demanded in the amount of $132,000 for violation of these two requirements through March 2, 2015.** See the enclosed chart. Stipulated penalties will continue to accrue for each of these violations up to the date of compliance. Pursuant to Paragraph 26 of the Consent Agreement, all stipulated penalties

[1] The failure to submit these reports makes it more difficult for EPA to determine the extent to which your client is complying with the CA/FO.
[2] Failure to comply with the SEP results in separate stipulated penalties as outlined in Paragraphs 25a – c of the Consent Agreement.





are due and payable within thirty (30) days of your receipt of this demand letter. The method of payment shall be in accordance with the provisions of Paragraph 3 of the Consent Agreement.

Alternatively, if your client disagrees with the stipulated penalties demand, pursuant to Paragraph 27 of the Consent Agreement, within 20 days of your receipt of this letter, W.R. Recycling may provide EPA a written explanation of why stipulated penalties are not due and owing, or not appropriate, for the cited violations of the CA/FO (including any technical, financial or other information that it deems relevant). In that event, after EPA's review of the explanation, EPA will decide whether to reduce or eliminate the stipulated penalties demanded in this letter pursuant to Paragraph 28 of the Consent Agreement. You, on behalf of your client, will be provided with written notification of EPA's decision and W.R. Recycling would have to pay any stipulated penalties that are then demanded by EPA.

Please be advised that if W.R. Recycling fails to pay stipulated penalties, EPA may refer the matter to the United States Department of Treasury and/or Department of Justice, as appropriate, for collection under applicable law.

If there are any questions regarding this matter, please contact Amy Chester in the Office of Regional Counsel at (212) 637-3213

Sincerely,

Leonard Voo, Chief
RCRA Compliance Branch

Enclosure

cc: Ms. Suzette Melendez Colon, Vice President
Puerto Rico Environmental Quality Board
P.O. Box 11488
Santurce, Puerto Rico 00910

**Enclosure**

**W.R. Recycling Inc.**
**Consent Agreement and Final Order - Docket No. RCRA-02-2012-7106**

Effective Date of the CAFO: June 17, 2014

| Consent Agreement Requirement | Due Date | Days in Violation (through 03/02/15) | Penalty Calculations[3] | Penalty Sub-Totals |
|---|---|---|---|---|
| Paragraph 1 of the Consent Agreement: Submission of Compliance Report detailing compliance with operational requirements set forth therein. | 07/17/14 | 228 | ($150/day x 30 days) = $4,500<br>($500/day x 198 days) = $99,000 | $103,500 |
| Paragraph 10 of the Consent Agreement: Submission of SEP Report detailing compliance with SEP requirements set forth in Consent Agreement. | 12/14/14 | 78 | ($150/day x 30 days) = $4,500<br>($500/day x 48 days) = $24,000 | $28,500 |
| | | | Total Stipulated Penalties Due as of March 2, 2015 | $132,000 |

[3] Each violation of the CA/FO requirements cited is subject to stipulated penalties in the amount of $150 per day of non-compliance for the first 30 days and $500 per day of non-compliance thereafter.



UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 2
290 BROADWAY
NEW YORK, NY 10007-1866

AUG 1 8 2015

**United States First Class Mail and Email**

Lcdo. Jose L. Lugo Toro
Lugo Toro Law Offices
PMB 171
400 Calle Calaf
San Juan, Puerto Rico 00918-1314

Re: W.R. Recycling Inc.
Past Due Stipulated Penalties and New Stipulated Penalty Demand
Consent Agreement and Final Order - Docket No. RCRA-02-2012-7106

Dear Counsel:

The purpose of this letter is to remind W.R. Recycling Inc. (W.R. Recycling) of stipulated penalties already due and owing under the above referenced Consent Agreement and Final Order (CA/FO), as well as to demand new stipulated penalties under the CA/FO.

Past Due Stipulated Penalties

As you know, on March 13, 2015, EPA sent W.R. Recycling a Demand for Stipulated Penalties in the amount of $132,000 for its failure to timely submit a Compliance Report and the first Supplemental Environmental Project (SEP) Report to EPA as required by Paragraphs 1 and 10 of the Consent Agreement in the above referenced CA/FO. On or about April 16, 2015, EPA received a submission on behalf of W.R. Recycling that included information regarding W.R. Recycling's compliance with the CA/FO, as well as its difficulties in implementing the SEP. However, the submission neither responded to EPA's stipulated penalty demand nor provided a basis to reduce said demand. As a result, on June 2, 2015, EPA sent a letter advising W.R. Recycling that the stipulated penalty in the amount of $132,000 is "presently due and owing." EPA has not received this payment. **A stipulated penalty payment of $132,000 should be made immediately in accordance with the provisions of Paragraph 3 of the Consent Agreement.**

Demand for New Stipulated Penalties

EPA's June 2015 letter also provided W.R. Recycling with the opportunity to provide more detailed information regarding any costs it may have incurred in implementing the SEP pursuant to the CA/FO. Additionally, W.R. Recycling was required to submit a second SEP report to EPA on June 17, 2015. See Consent Agreement, Para 11. To date, EPA has not received any information beyond the April 2015 submission regarding the facility's implementation, or lack thereof, of the SEP. As such, please be advised that EPA has determined that W.R. Recycling has not performed any aspect of the SEP in compliance with

the terms of the CA/FO.[1] Accordingly, **EPA is hereby demanding a stipulated penalty in the amount of $110,000 for failure to perform the SEP.**[2] See Consent Agreement, Para. 25. Pursuant to Paragraph 26 of the Consent Agreement, this stipulated penalty is due and payable within thirty (30) days of your receipt of this demand letter. The method of payment must be in accordance with the provisions of Paragraph 3 of the Consent Agreement.

Alternatively, if your client disagrees with the stipulated penalty for failing to perform the SEP, pursuant to Paragraph 27 of the Consent Agreement, within 20 days of your receipt of this letter, W.R. Recycling may provide EPA a written explanation of why stipulated penalties are not due and owing, or not appropriate, for its failure to perform the SEP (including any technical, financial or other information that it deems relevant). In that event, after EPA's review of the explanation, EPA will decide, pursuant to Paragraph 28 of the Consent Agreement, whether to reduce or eliminate the stipulated penalties demanded in this letter. You, on behalf of your client, will be provided with written notification of EPA's decision and W.R. Recycling would have to pay any stipulated penalties that are then demanded by EPA.

Please be advised that if W.R. Recycling fails to pay any portion of the due and owing stipulated penalties, EPA may refer the matter to the United States Department of Treasury and/or Department of Justice for collection under applicable law.

If there are any questions regarding this matter, please contact Amy Chester in the Office of Regional Counsel at (212) 637-3213.

Sincerely,

Leonard Voo, Chief
RCRA Compliance Branch

cc: Ms. Suzette Melendez Colon, Vice President
Land Pollution Control Divsion
Puerto Rico Environmental Quality Board
P.O. Box 11488
San Juan, Puerto Rico 00910

[1] W.R. Recycling's April 2015 submission suggested the company was no longer committed to performing the SEP. EPA's June 2015 letter indicated that if EPA did not hear from W.R Recycling within 15 days of its receipt of that letter, EPA would assume WR Recycling was not going to perform the SEP. On June 18, 2015, EPA granted W.R. Recycling an extra five (5) business days to respond. EPA never received a response.

[2] Stipulated penalties have also accrued and will continue to accrue for failure to submit the June 2015 SEP Report. Presently however, EPA is demanding a stipulated penalty for failure to conduct the SEP in its entirety, rather than for failing to submit the June 2015 SEP Report.



UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
ACCOUNTING OPERATION CINCINNATI, OHIO 45268

## ******NOTICE OF DELINQUENCY******

PAYER : WR RECYCLING INC
C/O LUGO TORO LAW OFFICES
PMB 171
400 CALLE CALAF
SAN JUAN, PR 00918-1314

---

Dear Sir or Madam,
Our records indicate your account has been outstanding for more than 30 days and is delinquent. As indicated in your previous bill, interest and handling charges have been added to the amount due now.

A summary of your account as of 01/13/16 date is as follows:

| | | | |
|---|---|---|---|
| Bill Number: | !CRA-02-2012-7106-S | Interest Charges : | 1,100.00 |
| | | Handling Charges : | 150.00 |
| Due Date : | 04/12/15 | Penalty Charges : | 4,752.00 |
| Original Debt : | 132,000.00 | Less Payment : | 0.00 |
| | | Amount now due : | $138,002.00 |

If the debt is not fully paid within 30 days from the bill date of this letter, you will be assessed additional interest and handling charges for each 30 day period the bill remains unpaid. If the debt becomes 90 days past due you will also be assessed a penalty charge. These charges will be assessed until the entire amount owed is collected. Delinquent debt may also be referred to the Department of Treasury for collection action. The Department of Treasury will assess an additional servicing fee to the amount of a referred debt. The Department of Treasury may also report debts to credit reporting agencies, refer debts to collection agencies, and offset the amount from federal payments to the debtor and take other actions deemed necessary to collect the funds.

You have the right to inspect and copy our records related to this debt, request review within EPA of the agency's determination of the debt, and enter into a written repayment agreement.Please contact Blake Edwards at 513-487-2096 (edwards.blake@epa.gov) if you wish to initiate any of these actions or if you have any questions about this letter. Please make sure to indicate the BILL No. on your payment.

To mail a payment:
US Environmental Protection Agency Fines and Penalties
Cincinnati Finance Center
PO Box 979077
St. Louis, MO 63197-9000

For Wire Transfer:
Federal Reserve Bank of New York
ABA = 021030004
Account = 68010727
SWIFT address = FRNYUS33
33 Liberty Street
New York NY 10045

Online Payment:
www.pay.gov
Search "SFO 1.1"
Open form & complete

Additional Information:

Your immediate payment is appreciated.

inal-day

Certified # 7010 1870 0003 2933 6709




UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
ACCOUNTING OPERATION CINCINNATI, OHIO 45268

# ******NOTICE OF DELINQUENCY******

PAYER : WR RECYCLING INC
C/O LUGO TORO LAW OFFICES
PMB 171
400 CALLE CALAF
SAN JUAN, PR 00918-1314

---

Dear Sir or Madam,
Our records indicate your account has been outstanding for more than 30 days and is delinquent. As indicated in your previous bill, interest and handling charges have been added to the amount due now.

A summary of your account as of 12/10/15 date is as follows:

| | | | |
|---|---|---|---|
| Bill Number: | !CRA-02-2012-7106-S | Interest Charges : | 880.00 |
| | | Handling Charges : | 135.00 |
| Due Date : | 04/12/15 | Penalty Charges : | 4,092.00 |
| Original Debt : | 132,000.00 | Less Payment : | 0.00 |
| | | Amount now due : | $137,107.00 |

If the debt is not fully paid within 30 days from the bill date of this letter, you will be assessed additional interest and handling charges for each 30 day period the bill remains unpaid. If the debt becomes 90 days past due you will also be assessed a penalty charge. These charges will be assessed until the entire amount owed is collected. Delinquent debt may also be referred to the Department of Treasury for collection action. The Department of Treasury will assess an additional servicing fee to the amount of a referred debt. The Department of Treasury may also report debts to credit reporting agencies, refer debts to collection agencies, and offset the amount from federal payments to the debtor and take other actions deemed necessary to collect the funds.

You have the right to inspect and copy our records related to this debt, request review within EPA of the agency's determination of the debt, and enter into a written repayment agreement. Please contact Blake Edwards at 513-487-2096 (edwards.blake@epa.gov) if you wish to initiate any of these actions or if you have any questions about this letter. Please make sure to indicate the BILL No. on your payment.

To mail a payment:
US Environmental Protection Agency Fines and Penalties
Cincinnati Finance Center
PO Box 979077
St. Louis, MO 63197-9000

For Wire Transfer:
Federal Reserve Bank of New York
ABA = 021030004
Account = 68010727
SWIFT address = FRNYUS33
33 Liberty Street
New York NY 10045

Online Payment:
www.pay.gov
Search "SFO 1.1"
Open form & complete

Additional information:
MARCH 2015 STIPULATED PENALTY DEMAND

Your immediate payment is appreciated.

inal-day

Certified # 7013 1710 0000 4291 9414



UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
ACCOUNTING OPERATION CINCINNATI, OHIO 45268

******NOTICE OF DELINQUENCY******

PAYER : WR RECYCLING INC
C/O LUGO TORO LAW OFFICES
PMB 171
400 CALLE CALAF
SAN JUAN, PR 00918-1314

Dear Sir or Madam,
Our records indicate your account has been outstanding for more than 30 days and is delinquent. As indicated in your previous bill, interest and handling charges have been added to the amount due now.

A summary of your account as of 01/13/16 date is as follows:

| | | | |
|---|---|---|---|
| Bill Number: | !CRA-02-2012-7106-S | Interest Charges : | 366.67 |
| | | Handling Charges : | 60.00 |
| Due Date : | 09/17/15 | Penalty Charges : | 660.00 |
| Original Debt : | 110,000.00 | Less Payment : | 0.00 |
| | | Amount now due : | $111,086.67 |

If the debt is not fully paid within 30 days from the bill date of this letter, you will be assessed additional interest and handling charges for each 30 day period the bill remains unpaid. If the debt becomes 90 days past due you will also be assessed a penalty charge. These charges will be assessed until the entire amount owed is collected. Delinquent debt may also be referred to the Department of Treasury for collection action. The Department of Treasury will assess an additional servicing fee to the amount of a referred debt. The Department of Treasury may also report debts to credit reporting agencies, refer debts to collection agencies, and offset the amount from federal payments to the debtor and take other actions deemed necessary to collect the funds.

You have the right to inspect and copy our records related to this debt, request review within EPA of the agency's determination of the debt, and enter into a written repayment agreement. Please contact Blake Edwards at 513-487-2096 (edwards.blake@epa.gov) if you wish to initiate any of these actions or if you have any questions about this letter. Please make sure to indicate the BILL No. on your payment.

To mail a payment:
US Environmental Protection Agency Fines and Penalties
Cincinnati Finance Center
PO Box 979077
St. Louis, MO 63197-9000

For Wire Transfer:
Federal Reserve Bank of New York
ABA = 021030004
Account = 68010727
SWIFT address = FRNYUS33
33 Liberty Street
New York NY 10045

Online Payment:
www.pay.gov
Search "SFO 1.1"
Open form & complete

Additional information:

Your immediate payment is appreciated.

nal-day

Certified # 7010 1870 0003 2933 6693




UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
ACCOUNTING OPERATION CINCINNATI, OHIO 45268

# ******NOTICE OF DELINQUENCY******

PAYER : WR RECYCLING INC
C/O LUGO TORO LAW OFFICES
PMB 171
400 CALLE CALAF
SAN JUAN, PR 00918-1314

Dear Sir or Madam,
Our records indicate your account has been outstanding for more than 30 days and is delinquent. As indicated in your previous bill, interest and handling charges have been added to the amount due now.

A summary of your account as of 12/10/15 date is as follows:

| | | | |
|---|---|---|---|
| Bill Number: | !CRA-02-2012-7106-S | Interest Charges : | 275.00 |
| | | Handling Charges : | 45.00 |
| Due Date : | 09/17/15 | Penalty Charges : | 0.00 |
| Original Debt : | 110,000.00 | Less Payment : | 0.00 |
| | | Amount now due : | $110,320.00 |

If the debt is not fully paid within 30 days from the bill date of this letter, you will be assessed additional interest and handling charges for each 30 day period the bill remains unpaid. If the debt becomes 90 days past due you will also be assessed a penalty charge. These charges will be assessed until the entire amount owed is collected. Delinquent debt may also be referred to the Department of Treasury for collection action. The Department of Treasury will assess an additional servicing fee to the amount of a referred debt. The Department of Treasury may also report debts to credit reporting agencies, refer debts to collection agencies, and offset the amount from federal payments to the debtor and take other actions deemed necessary to collect the funds.

You have the right to inspect and copy our records related to this debt, request review within EPA of the agency's determination of the debt, and enter into a written repayment agreement. Please contact Blake Edwards at 513-487-2096 (edwards.blake@epa.gov) if you wish to initiate any of these actions or if you have any questions about this letter. Please make sure to indicate the BILL No. on your payment.

To mail a payment:
US Environmental Protection Agency Fines and Penalties
Cincinnati Finance Center
PO Box 979077
St. Louis, MO 63197-9000

For Wire Transfer:
Federal Reserve Bank of New York
ABA = 021030004
Account = 68010727
SWIFT address = FRNYUS33
33 Liberty Street
New York NY 10045

Online Payment:
www.pay.gov
Search "SFO 1.1"
Open form & complete

Additional information:
AUGUST 2015 STIPULATED DEMAND

Your immediate payment is appreciated.

inal-day

Certified # 7013 1710 0000 4291 9414

March 22, 2016




000106



WR RECYCLING INC
2.3 CARR 103
CABO ROJO, PR 00623

FedDebt Case Identification: 1600104120A
Agency Debt Identification: RCRA-02-2012-7106-STIP1

Your unpaid delinquent debt owed to the Environmental Protection Agency, Cincinnati Finance Center, Fines, Penalties, FOIA, Travel, Overpayments, has been referred to the U.S. Department of the Treasury for collection. According to the records of the Environmental Protection Agency, you owe $139,901.10.

Collection action will continue unless you make payment, within ten (10) days from the date of this letter, in the amount of $179,073.41, which includes all applicable fees, interest, and penalties, as of today.

If you wish to avoid further collection action and additional charges, you must immediately pay your debt. Your check or money order should be made payable to the U.S. Treasury-FS. To ensure proper credit to your account, please include the FedDebt Case Identification Number 1600104120A in the memo section of your payment. Please note that we accept credit card payments via MasterCard, Visa, Discover, or American Express. Please send your payment with the attached PAYMENT COUPON to: U.S. Department of the Treasury - FS
Debt Management Services
Post Office Box 979101
St. Louis, MO 63197-9000

You may also make an electronic payment via pay.gov:
(https://www.pay.gov/paygov/paymydebt).

Correspondence should be mailed to: U.S. Department of the Treasury
Debt Management Services
Post Office Box 830794
Birmingham, AL 35283-0794

If you are unable to pay your debt in full, please contact a Customer Service Representative toll free at (888) 826-3127, or the Telecommunications Device for the Deaf (TDD) at (866) 896-2947.

U. S. Department of the Treasury
Debt Management Services

DSBDL__003_ fdv1 Detach Here 000000000821600104120A DL__0010958080 108

PAYMENT COUPON

FedDebt Case Identification Number: 1600104120A
Amount Due: $179,073.41
Amount Enclosed: ____________________

WR RECYCLING INC
2.3 CARR 103
CABO ROJO, PR 00623

METHOD OF PAYMENT (check one):
*Make the check/money order payable to: U.S. Department of the Treasury-FS*

☐ Personal/Company Check ☐ Money Order ☐ Bank Check
☐ Visa ☐ MasterCard ☐ Discover ☐ American Express

Credit Card Account Number: ____________________

Expiration Date: __________ Authorized Amount: ____________

Authorized Signature: ____________________

Remit to:
U.S. Department of the Treasury--FS
Debt Management Services
Post Office Box 979101
St. Louis, Mo 63196-9000

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❒ 1 U.S. Government Plaintiff
- ❒ 3 Federal Question *(U.S. Government Not a Party)*
- ❒ 2 U.S. Government Defendant
- ❒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❒ 1 | ❒ 1 | Incorporated *or* Principal Place of Business In This State | ❒ 4 | ❒ 4 |
| Citizen of Another State | ❒ 2 | ❒ 2 | Incorporated *and* Principal Place of Business In Another State | ❒ 5 | ❒ 5 |
| Citizen or Subject of a Foreign Country | ❒ 3 | ❒ 3 | Foreign Nation | ❒ 6 | ❒ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ❒ 110 Insurance
- ❒ 120 Marine
- ❒ 130 Miller Act
- ❒ 140 Negotiable Instrument
- ❒ 150 Recovery of Overpayment & Enforcement of Judgment
- ❒ 151 Medicare Act
- ❒ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ❒ 153 Recovery of Overpayment of Veteran's Benefits
- ❒ 160 Stockholders' Suits
- ❒ 190 Other Contract
- ❒ 195 Contract Product Liability
- ❒ 196 Franchise

**REAL PROPERTY**
- ❒ 210 Land Condemnation
- ❒ 220 Foreclosure
- ❒ 230 Rent Lease & Ejectment
- ❒ 240 Torts to Land
- ❒ 245 Tort Product Liability
- ❒ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
- ❒ 310 Airplane
- ❒ 315 Airplane Product Liability
- ❒ 320 Assault, Libel & Slander
- ❒ 330 Federal Employers' Liability
- ❒ 340 Marine
- ❒ 345 Marine Product Liability
- ❒ 350 Motor Vehicle
- ❒ 355 Motor Vehicle Product Liability
- ❒ 360 Other Personal Injury
- ❒ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ❒ 365 Personal Injury - Product Liability
- ❒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ❒ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ❒ 370 Other Fraud
- ❒ 371 Truth in Lending
- ❒ 380 Other Personal Property Damage
- ❒ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ❒ 440 Other Civil Rights
- ❒ 441 Voting
- ❒ 442 Employment
- ❒ 443 Housing/ Accommodations
- ❒ 445 Amer. w/Disabilities - Employment
- ❒ 446 Amer. w/Disabilities - Other
- ❒ 448 Education

**PRISONER PETITIONS**

**Habeas Corpus:**
- ❒ 463 Alien Detainee
- ❒ 510 Motions to Vacate Sentence
- ❒ 530 General
- ❒ 535 Death Penalty

**Other:**
- ❒ 540 Mandamus & Other
- ❒ 550 Civil Rights
- ❒ 555 Prison Condition
- ❒ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ❒ 625 Drug Related Seizure of Property 21 USC 881
- ❒ 690 Other

**LABOR**
- ❒ 710 Fair Labor Standards Act
- ❒ 720 Labor/Management Relations
- ❒ 740 Railway Labor Act
- ❒ 751 Family and Medical Leave Act
- ❒ 790 Other Labor Litigation
- ❒ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ❒ 462 Naturalization Application
- ❒ 465 Other Immigration Actions

**BANKRUPTCY**
- ❒ 422 Appeal 28 USC 158
- ❒ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ❒ 820 Copyrights
- ❒ 830 Patent
- ❒ 835 Patent - Abbreviated New Drug Application
- ❒ 840 Trademark

**SOCIAL SECURITY**
- ❒ 861 HIA (1395ff)
- ❒ 862 Black Lung (923)
- ❒ 863 DIWC/DIWW (405(g))
- ❒ 864 SSID Title XVI
- ❒ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ❒ 870 Taxes (U.S. Plaintiff or Defendant)
- ❒ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ❒ 375 False Claims Act
- ❒ 376 Qui Tam (31 USC 3729(a))
- ❒ 400 State Reapportionment
- ❒ 410 Antitrust
- ❒ 430 Banks and Banking
- ❒ 450 Commerce
- ❒ 460 Deportation
- ❒ 470 Racketeer Influenced and Corrupt Organizations
- ❒ 480 Consumer Credit
- ❒ 485 Telephone Consumer Protection Act
- ❒ 490 Cable/Sat TV
- ❒ 850 Securities/Commodities/ Exchange
- ❒ 890 Other Statutory Actions
- ❒ 891 Agricultural Acts
- ❒ 893 Environmental Matters
- ❒ 895 Freedom of Information Act
- ❒ 896 Arbitration
- ❒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ❒ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ❒ 1 Original Proceeding
- ❒ 2 Removed from State Court
- ❒ 3 Remanded from Appellate Court
- ❒ 4 Reinstated or Reopened
- ❒ 5 Transferred from Another District *(specify)*
- ❒ 6 Multidistrict Litigation - Transfer
- ❒ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ❒ Yes ❒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE DOCKET NUMBER

DATE SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

## CATEGORY SHEET

**You must accompany your complaint with this Category Sheet, and the Civil Cover Sheet (JS-44).**

---

Attorney Name (Last, First, MI): Gonzalez-Rivera, Maritza

USDC-PR Bar Number: 208801

Email Address: maritza.gonzalez@usdoj.gov

---

1. Title (caption) of the Case (provide only the names of the first party on each side):

   Plaintiff: United States of America

   Defendant: WR Recycling Inc.

2. Indicate the category to which this case belongs:

   ☒ Ordinary Civil Case
   ☐ Social Security
   ☐ Banking
   ☐ Injunction

3. Indicate the title and number of related cases (if any).

4. Has a prior action between the same parties and based on the same claim ever been filed before this Court?

   ☐ Yes
   ☒ No

5. Is this case required to be heard and determined by a district court of three judges pursuant to 28 U.S.C. § 2284?

   ☐ Yes
   ☒ No

6. Does this case question the constitutionality of a state statute? (See, Fed.R.Civ. P. 24)

   ☐ Yes
   ☒ No

Date Submitted: April 29, 2019

rev. Dec. 2009

Print Form　Reset Form